[Civil No. 2005.    Filed May 16, 1922.]

[206 Pac. 1075.]

AMERICAN SURETY COMPANY OF NEW YORK, Appellant, v. RHODA G. HATCH, Appellee.

1. ATTACHMENT—RECOVERY ON ATTACHMENT BOND NOT LIMITED TO MARKET VALUE OF ATTACHED PROPERTY.—Recovery on an attachment bond is not limited to the value of the attached property, but may include damages from loss of use of it while it was out of the owner's possession.

2. TRIAL—SEPARATE FINDINGS OF FACT ON EACH CAUSE OF ACTION NOT NECESSARY.—Ordinarily, no matter how many causes of action may be contained in a complaint and submitted to the jury on evidence with respect to them, a general verdict may be returned, and, if for the plaintiff, may be for a single amount, without requiring a separate statement of the amount found upon each cause of action.

3. TRIAL—FAILURE TO REQUIRE SEPARATE STATEMENT BY THE JURY OF DAMAGE IN ACTION ON ATTACHMENT AND SUPERSEDEAS BONDS NOT ERROR, WHERE THE SURETY ON EACH BOND WAS THE SAME.—

Under Civil Code of 1913, paragraph 1243, providing that the condition of a *supersedeas* bond shall be to pay all damages caused by the suspension of the order appealed from, in an action by a property owner against a surety on an attachment bond and a *supersedeas* bond, for damages from wrongful attachment, where the chief damage was for the wrongful detention of the property, in view of the fact that the surety on both bonds was the same, failure to require the jury to state the amount of damage awarded on each bond was not error.

4. APPEAL AND ERROR—APPEAL WITH SUPERSEDEAS BOND MAINTAINS STATUS QUO DURING PENDING OF APPEAL.—If an attachment or other mesne process is dissolved, the effect of an appeal with *supersedeas*, instead of terminating a bond previously given, is to continue all proceedings, including the bond, in effect until the determination of the appeal, and on reversal of the order dissolving all proceedings, including the bond first given, continue in effect from the beginning.

5. ATTACHMENT—VERDICT FOR $19,426.56 FOR WRONGFUL ATTACHMENT HELD NOT EXCESSIVE.—Where plaintiff's entire property, including household goods, was attached in a cause of action which did not come within Civil Code of 1913, paragraph 1398, specifying grounds of attachment, a verdict of $19,426.56 for attachment of automobiles, automobile trucks, a boarding-house outfit, mining supplies, and mining machinery valued at $18,000 was not excessive.

6. APPEAL AND ERROR — ATTACHMENT — EXCESS DAMAGES CANNOT BE CHARGED AGAINST ONE OF SEVERAL BONDS FOR TIME IT STANDS.—In an action by a property owner against a surety on bonds for damages for wrongful attachment of property, even though an attachment bond, a *supersedeas* bond, and an appeal bond were signed by the same surety, and the aggregate amount of the judgment did not equal the sum of all the bonds, excess damage could not be charged against any one of the bonds for the time it stood as indemnity.

7. APPEAL AND ERROR — DAMAGES RECOVERABLE ON AN APPEAL BOND PROPERLY LIMITED TO COSTS OF APPEAL.—In an action by a property owner against a surety on an attachment bond, a *supersedeas* bond, and an appeal bond for damages for wrongful attachment of property, the damages recoverable on the appeal bond were properly limited to costs of the appeal.

APPEAL from a judgment of the Superior Court of the County of Yuma. Samuel L. Pattee, Judge. Affirmed.

6. Measure of damages recoverable for wrongful attachment, notes, 68 Am. St. Rep. 266; Ann. Cas. 1915B, 1219.

Messrs. Lawler & Degnan and Messrs. Wright & Darnell, for Appellant.

Mr. Thomas D. Molloy, for Appellee.

ROSS, C. J.—The plaintiff, Rhoda Hatch, and one Joe Nohlechek, were sued in the superior court of Yuma county, by one George B. Leighton and one May Boone, upon a claim of indebtedness in the sum of $10,664.57. The action in that court was numbered 2987. Upon commencing the action, May 10, 1919, Leighton and Boone obtained an attachment upon the property of said plaintiff, Hatch, and the said Nohlechek, by executing an attachment bond, in the sum of the claimed indebtedness, under the provisions of paragraph 1398 of the Civil Code of 1913, with the defendant-appellant, American Surety Company of New York, as surety, conditioned as the law provides. Thereafter, on May 21, 1919, upon motion of the defendants, in cause 2987, the attachment was vacated and dissolved, but the property attached was not returned to said defendants, for the reason that Leighton and Boone appealed from the said order dissolving the attachment, and in accordance with the order of the court, fixing that amount, filed a *supersedeas* bond in the sum of $10,000, executed by the defendant-appellant, American Surety Company, conditioned as provided in paragraph 1243 of the Civil Code of Arizona of 1913, which bond was approved by the court. The said Leighton and Boone also filed and had approved, by the clerk of the superior court of Yuma county, in said cause, an appeal bond, executed by defendant surety company, to cover the costs of appeal, conditioned as provided in paragraph 1238 of the Civil Code of 1913. On January 26, 1920, cause No. 2987, coming on to be heard on its merits, in the superior court, was dismissed, and the said judgment of dismissal became final. Thereafter the

appeal from the order dissolving the attachment coming on in the Supreme Court, for hearing and disposition, and the appellants not appearing, the same was, on April 6, 1920, dismissed.

On September 20, 1920, the said Rhoda G. Hatch, as plaintiff, in her own right, and as assignee of her codefendant, Joe Nohlechek, in cause No. 2987, institituted this suit against the defendant-appellant, American Surety Company, to recover damages she alleges she sustained by reason of the attachment of her property and the suspension of the order vacating and dissolving the attachment lien. The property attached and detained by Leighton and Boone, in cause No. 2987, as belonging to the plaintiff and her assignor, consisted of personal property, such as automobiles, automobile trucks, boarding-house outfit, certain mining supplies, and mining machinery valued by plaintiff at $18,000, $13,000 of which was hers, and $5,000 Nohlechek's.

In her complaint the plaintiff sets forth four causes of action. The first is upon the attachment bond, and is for $30,000 damages, alleged to have been suffered from May 10th, the date of its levy, up to and including January 24, 1920, the date cause No. 2987 was finally disposed of in favor of this plaintiff and her assignor, Nohlechek.

The second cause of action covers the same period, and is for damages in the sum of $16,689, in attaching the property of Joe Nohlechek with an allegation that the right of action had been assigned and sold to plaintiff.

The third cause of action is based upon the *supersedeas* bond filed in cause No. 2987 to suspend the order of the court entered May 21, 1919, dissolving the attachment, and is for damages in the sum of $27,426, alleged to have accrued between May 31, 1919, the date of filing the *supersedeas* bond, and January 26, 1920.

The fourth cause of action is based upon the appeal bond, conditioned to pay costs, and is for the sum of $40. The prayer for judgment is for $20,-704.57.

The suit was against the American Surety Company of New York alone, as surety on all of said bonds, it appearing from the allegations of the complaint that the principals, Leighton and Boone, were nonresidents of Arizona. The defendant in its answer admits giving the attachment bond in the sum of $10,664.57, and the *supersedeas* bond in the sum of $10,000, and the undertaking on appeal for the costs in the sum of $500, and denies all the other material allegations of the complaint.

The case was tried before the court with a jury, and resulted in a general verdict in favor of the plaintiff in the sum of $19,426.56. From a judgment for that amount, and from an order overruling a motion for new trial, the defendant, surety company, has appealed to this court.

Upon the motion for a new trial, the defendant presented all the errors here assigned, and some others, and the learned trial judge, in a well-expressed and luminous written opinion, overruled all of them. We have given full consideration to defendant's arguments and authorities on appeal, and feel they are fully met and correctly decided in the trial judge's opinion. We accordingly adopt it as the opinion of this court. In it will be found the errors complained of, and the reasons for their rejection:

"It is argued with great earnestness that the court was in error in refusing an instruction that the amount of damages could not exceed the reasonable value of the property with interest at the legal rate from the time of the levy, and in permitting the jury to take into consideration the rental value of the property during the time it was held under attachment, even though such rental value might exceed the proven value of the property itself. Some cases are

cited, usually for the conversion of property or injury to personal property, in which the rule is stated as claimed by counsel for the defendant, and in one or two instances, such as the Kentucky case of *Carr* v. *Wood*, 31 Ky. Law Rep. 708, 103 S. W. 314, the same rule is applied in suits on attachment bonds. In that case, however, the court bases its ruling upon the peculiar circumstances of that particular case. There the attachment was originally rightful, but was dissolved, and in a legal sense became wrongful by reason of an adjudication in bankruptcy made within four months after the levy of the attachment. Under such circumstances the court might well hold that the plaintiff would be limited to the recovery of the actual value of the property. But the condition of the bond and the object and purpose of giving it is to secure the defendant in the attachment proceeding against loss or damage by reason of the attachment, and to guarantee the payment of all damages that may be suffered by reason of the wrongful issuance of the attachment and the proceedings had under it. Compensation for the loss occasioned by the levy of the writ of attachment and the withholding of the property by virtue of that levy is the basis of the right of recovery, and in many cases the value of the property; that is, the market value, at the time of the levy would be absolutely inadequate to compensate the injured party for the loss sustained. Instancing by the facts in this case: Here were certain trucks the rental value of which was shown to be a very considerable sum per day. They could be sold in the market only as second-hand trucks no matter how short a time they may have been used. But their earning capacity was not in the least affected by the diminution in market value caused by use. If the plaintiff could, as the evidence tended to show, make more or have made more by the renting of these trucks during the period in which they were held under the attachment than the value of the trucks, then on principle there would seem to be no reason why she should not do so, and if the rental value exceeded the market value of the trucks at the time of the levy, it is simply one of those instances where the allowance of the market value fails to award the injured party the compensation that the law contemplates, and fails to

fully indemnify him for the loss sustained by reason of the wrongful attachment. The rule laid down in Texas in the case of *Pridgin* v. *Strickland,* 8 Tex. 427, 58 Am. Dec. 124, and apparently followed in that state in the subsequent cases of *Munnerlyn* v. *Alexander,* 38 Tex. 125, and *Taylor Jewelry Co.* v. *Kelley* (Tex. Civ. App.), 189 S. W. 340, seems to be more in accord with the principle upon which damages are allowed in actions upon attachment bonds. In each of those cases it was either in terms or in effect held that the right of recovery was not limited to the market value of the property at the time it was levied upon, but in addition to such value the value of the use of the attached property during the time it was withheld may be considered and allowed if the jury find that loss was suffered by the deprivation of such use.

"Since the argument the court has been furnished by counsel for the defendant with a copy of the abstract of record and of the briefs and of the opinion of the court in the case of *American Surety Co.* v. *Duvall,* 22 Ariz. 261, 196 Pac. 457, recently decided by our Supreme Court, and on the strength of certain statements made in that opinion it is urged that upon the trial the court erred in not instructing the jury to find separately the amount of damage chargeable to each of the several bonds sued upon. It is true that in that case the suit was upon an injunction bond and upon a *supersedeas* bond on appeal from an order dissolving the injunction, and that a separate verdict was rendered upon each cause of action based upon the different bonds. No doubt such a course is permissible. The court may either by requiring a separate verdict upon each cause of action or by the submission of interrogatories require in effect a separate finding of fact from the jury upon each of the questions presented. But such a practice is not at all mandatory. Ordinarily, no matter how many causes of action may be contained in a complaint and submitted to the jury upon evidence with respect to them, a general verdict may be returned, and, if for the plaintiff, may be for a single amount, without requiring a separate statement of the amount found upon each cause of action. It will be seen from the record in the case of *American Surety Co.* v. *Duvall* that the

course pursued in that case was entirely practicable. The injunction remained in force for a period of six months, as stated in one of the briefs of counsel. An order was made dissolving it. From that order an appeal was taken and *supersedeas* bond given which had the effect of continuing the injunction in force for some time thereafter. The basis of the claimed damage was the loss or diminution in value of certain corporate stock, and, judging from a hasty examination of the record, the case justified the statement of the Supreme Court that: 'It was peculiarly within the province of the jury to determine whether Duvall's stock had depreciated in value, and, if so, what proportion of the loss sustained thereby occurred during the life of the respective bonds.'

"In that case the action of the court in requiring a separate verdict upon each of the two causes of action was either invited by the parties or at least acquiesced in by them, and in passing upon the case the Supreme Court merely accepted the situation as it found it, and held that each of the verdicts was sustained by sufficient evidence. The case did not present, nor did the court pass upon, the question whether it was essential to require a separate verdict upon each cause of action, even when requested by one of the parties. The facts in this case present an entirely different situation. Here an attachment was issued, and the defendants promptly moved to vacate it. Eleven days after the levy of the attachment the court made an order dissolving it. An appeal was taken at once, and the *supersedeas* bond involved given, which had the effect of continuing the attachment until the determination of the appeal by the Supreme Court, or perhaps until the attachment was dissolved by a judgment on the merits in favor of the defendants. The damage consisted not so much in the levy upon the property, but upon the continued wrongful detention of it, whereby the plaintiff in this case was deprived of its use, and likewise sustained damage by reason of the injury to or destruction of some of the property. As will be hereinafter more fully discussed, saving the eleven days prior to the taking of the appeal, both bonds were in force, and both responsible for the damage occurring after the appeal was taken. The same surety executed both the bonds. It would

be difficult and impracticable to attempt to segregate the loss or damage caused by the detention of the property during the eleven days, and charge it against the first bond when after the expiration of that short period both bonds were in force, and the surety upon each of them was responsible for the subsequent damage. In some form or other the defendant was liable for all damages which resulted to the plaintiff for the wrongful seizure and detention of the property, and it could be of no practicable benefit to defendant to require a separate statement of which bond was liable for which damage when in law both were liable for practically the entire period during which the property was detained.

"It was argued with great earnestness by counsel for the defendant that the effect of a *supersedeas* bond under paragraph 1243 of the Revised Statutes of Arizona of 1913, was to terminate all liability upon the attachment bond previously given, and render only the surety upon the *supersedeas* bond liable for subsequently accruing damage. The argument is based upon the language of the statute, which provides that the condition of the *supersedeas* bond shall be to *pay all damages* caused by the suspension of the order appealed from. This view, however, it would seem is based upon an entire misconception of the purpose and effect of a *supersedeas* bond. The effect of an appeal with *supersedeas* is to maintain the status quo during the pendency of the appeal. 3 C. J. 1315, § 1446. If an attachment or other mesne process is dissolved, the effect of such appeal with *supersedeas,* instead of annulling or terminating the bond previously given, is to continue all the proceedings, including the bond, in effect until the determination of the appeal, and if the order dissolving be reversed, all proceedings, including the bond first given, continue in effect from the beginning. The purpose of the *supersedeas* bond is not to act as a substitute for the former bond, but to furnish additional security for any damage that may be caused by the delay incident to the presentation and determination of the appeal. It is a superadded and not a substituted security, and from the time of the giving of the *supersedeas* bond liability exists against both bonds for

damage occurring subsequent to the perfecting of the appeal. As stated at the trial, the case would present an interesting question had different sureties executed the two bonds. Under the rule laid down by many courts in such a case the surety upon the *supersedeas* bond would be primarily liable, and the surety upon the attachment bond secondarily liable to the plaintiff for what damage might be caused, though both would be liable as far as the injured party is concerned, and might be sued jointly in an action to recover the resultant damages. But the question is academic where the same surety executed both bonds and is liable for the damage sustained by the other party up to the penalty of both bonds.

"Finally, it is urged as one of the grounds of the motion that the verdict is not justified by the evidence and is excessive in amount, caused by passion and prejudice on the part of the jury. The facts are that an attachment was issued upon a cause of action, which did not, as our Supreme Court held, come within the statute authorizing the issuance of the process at all. *Leighton* v. *Nohlechek*, 21 Ariz. 305, 188 Pac. 130. It was executed by the sheriff with almost Teutonic thoroughness. Practically every article of property that the defendant in that case and the plaintiff in this case had was seized. Even the bed upon which she slept and the dishes from which she ate were seized and taken into possession under the writ. In this situation it was incumbent upon the court to caution the jury that no feeling of indignation at the unwarranted action of the plaintiff in the former suit should be allowed to enter into consideration in fixing the damages. Such an instruction was given at the request of the defendant in this case, and there is no reason to believe that the jury disregarded it. The verdict was large, but no more so than the testimony warranted if believed by the jury, and there is no indication that the amount awarded was based upon anything but the jury's view of the evidence with respect to the amount of damages sustained.

"The newly discovered evidence furnishes no ground for granting the motion. It is doubtful if sufficient diligence is shown, but in any event the evidence is purely cumulative."

For the sake of clarity, and that we may not be misunderstood, we will add: That in no event, even though the three bonds sued on were given by the same surety, and. the aggregate amount of the judgment does not equal the sum of all the bonds, could any excess damages be charged against any one of the bonds for the time it stood as indemnity. For instance, in the present case from May 10th to May 21st there was but one bond, the attachment bond, to indemnify the attachment debtors, and any damages accruing during that time would be chargeable to that bond only—no excess of damages, over the face of that bond, could be charged to the *supersedeas* bond or the cost bond.

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by implication, beyond the terms of his contract." *Miller* v. *Stewart,* 9 Wheat. 702, 6 L. Ed. 189 (see, also, Rose's U. S. Notes).

"The bond creates and limits the liability of the surety. . . . " *Harkleroad* v. *Leonard,* 28 Tex. Civ. App. 133, 67 S. W. 127; *International Harvester Co.* v. *Iowa Hardware Co.,* 146 Iowa, 172, 29 L. R. A. (N. S.) 277, and note, 122 N. W. 951.

"The liability of the defendants [sureties] arises under their contract, and is limited by its terms and conditions." *Elder* v. *Kutner,* 97 Cal. 490, 32 Pac. 563; 4 C. J. 1290, § 3405.

There is no contention that the evidence shows the general verdict imposed any excess upon either of said bonds. If the evidence had presented a state of facts indicating that the damages accruing under either bond was in excess of its face, it would have been error for the court to have refused an instruction limiting the damages to the amount for which the bond was given. No such state of facts appears. The court very properly, in its instructions, limited

the damages recoverable upon the appeal bond to the costs of the appeal.

Finding no prejudicial error, the judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.